# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**WENDY S. MITCHELL,**

          **Plaintiff,**

**v.**                                  **Case No:  6:15-cv-1703-Orl-22DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

          **Defendant.**

_____

# REPORT AND RECOMMENDATION

      Wendy S. Mitchell (the Claimant), appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability benefits.  Doc. 1; R. 339-41, 364-69.  Claimant argues that the Administrative Law Judge (the ALJ) erred by failing to apply the correct legal standards to: 1) Dr. Yo Ho Wong's opinion; 2) Dr. William Winters' opinion; 3) Dr. John Parnell's opinions; and 4) Drs. Anthony Francis' and Nancy Winfrey's opinions.  Doc. 20 at 15-22.  Claimant argues that the matter should be reversed and remanded for an award of benefits, or, in the alternative, remanded for further proceedings.  *Id*. at 22-23.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

# I.    PROCEDURAL HISTORY.

      On June 14, 2001, Claimant filed an application for disability insurance benefits (DIB), alleging a disability onset date of May 25, 2001.  R. 339-41.  On August 23, 2004, the ALJ entered a decision finding that Claimant was not disabled.  R. 77-88.  Claimant requested that the Appeals Council review the ALJ's decision.  On January 18, 2006, Claimant filed applications for DIB and

supplemental security income (SSI).  *See* R. 97, 364-69.  On February 20, 2007, the Appeals Council granted Claimant's request for review, directed the ALJ to combine Claimant's applications for DIB and SSI, and remanded the case to the ALJ for further consideration.  R. 96-97.

On November 26, 2008, the ALJ entered a second decision finding that Claimant was not disabled.  R. 101-22.  Claimant requested that the Appeals Council review the ALJ's decision.  R. 191.  On April 24, 2009, the Appeals Council granted Claimant's request for review and remanded the case to the ALJ for further consideration.  R. 126-28.

On August 20, 2010, the ALJ entered a third decision finding that Claimant was not disabled.  R. 132-43.  Claimant requested that the Appeals Council review the ALJ's decision.  R. 201.  On May 7, 2012, the Appeals Council granted Claimant's request for review and remanded the case to the ALJ for further consideration, in part because the record on which the ALJ relied could not be located and needed to be reconstructed.  R. 145-46.

On June 13, 2014, the ALJ entered a fourth decision finding that Claimant was not disabled.  R. 25-71.  Claimant requested that the Appeals Council review the ALJ's decision.  R. 18.  On August 5, 2015, the Appeals Council denied Claimant's request for review.  Doc. 20-1.  On October 9, 2015, Claimant filed this appeal.  Doc. 1.

## II.     **THE ALJ'S DECISION.**

The ALJ, as previously mentioned, concluded that Claimant is not disabled.  Specifically, at step one, the ALJ found that Claimant engaged in substantial gainful activity through December 31, 2002.  R. 28.  At step two, the ALJ found that Claimant suffered from the following severe

impairments: chronic low back pain; depression; polysubstance abuse; and hepatitis C.  R. 28-29.[1]

At step three, the ALJ found that Claimant's impairments do not individually or in combination

meet or equal any of the listed impairments.  R. 29-32.  At step four, the ALJ found that Claimant

has the residual functional capacity (RFC) to perform medium work as defined by 20 C.F.R. §§

404.1567(c) and 416.967(c), with the following additional limitations:

> [C]laimant can use her upper extremities for pushing and pulling of
> arm/hand controls on a frequent basis and foot /pedal controls on an
> occasional basis; climb ramps and stairs occasionally, but is
> precluded from climbing ropes, ladders and scaffolds; she can stoop
> occasionally, but is able to perform all other postural maneuvers on
> a frequent basis; in terms of using her upper extremities for reaching
> in all directions, handling, fingering and feeling, she is able to do
> these activities on a frequent basis; she has no problems with regard
> to her ability to see and speak, but has some diminished visual
> acuity, which restricts her from jobs requiring excellent bilateral
> visual acuity; she has sufficient vision to drive, but she is precluded
> from doing so due to reasons unrelated to her vision problems; she
> should avoid work in proximity to environments that require her to
> work at unprotected heights or around concentrated atmospheric
> pollutants and concentrated vibration; she is able to perform simple,
> rote and repetitive job tasks in a work setting that does not change
> from one day to the next and involves no contact with members of
> the general public and only occasional contact with co-workers and
> supervisors; she should not be required to meet any production goals
> or quotas and she would perform better working with things as
> opposed to other people.

R. 32.[2]  In light of this RFC, the ALJ found that Claimant is unable to perform her past relevant

work as a licensed practical nurse.  R. 69.  At step five, the ALJ found that Claimant is capable of

performing various jobs in the national economy, including linen room attendant, mini bar

---

[1] The ALJ also noted that Claimant has repeatedly complained of rheumatoid arthritis, but found that the "medical evidence fails to substantiate this complaint."  R. 29.

[2] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. §§ 404. 1567(c), 416.967(c).

attendant, and laundry worker.  R. 69-70.  In light of the foregoing, the ALJ found that Claimant has not been disabled from her alleged onset date, May 25, 2001, through the date of his decision, June 13, 2014.  R. 70-71.

## III.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.  The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV.   ANALYSIS.

This appeal centers on the ALJ's consideration of Drs. Wong's, Winters', Parnell's, Francis', and Winfrey's opinions.  Doc. 20 at 17-22.  Claimant argues that the ALJ erred by assigning some or little weight to Drs. Wong's and Winters', failing to weigh Dr. Parnell's

opinions, and assigning great weight to Drs. Francis' and Winfrey's opinions.  *Id.*  The Commissioner argues that the ALJ articulated good cause, supported by substantial evidence, for the weight assigned to each of the challenged opinions.  Doc. 21 at 9-19.

At step four, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *Phillips*, 357 F.3d at 1238.  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).[3]

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  There is good cause to assign a treating physician's opinion less than substantial or considerable weight,

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179.

The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

### A.  Dr. Wong.

Claimant argues that the ALJ failed to articulate good cause, supported by substantial evidence, to assign Dr. Wong's opinion little weight. Doc. 20 at 17-18. The Commissioner argues that the ALJ articulated sufficient reason(s), supported by substantial evidence, for assigning Dr. Wong's opinion little weight. Doc. 21 at 9-11.

Claimant began treating with Dr. Wong, an internal medicine specialist, on April 23, 2007. R. 1196. Claimant presented with a history of chronic neck and low back pain, and "possible"

rheumatoid arthritis.  *Id*.  Dr. Wong's examination of Claimant was largely unremarkable, with the exception of tenderness in the neck and lower back.  *Id*.  Dr. Wong diagnosed Claimant with chronic neck and low back pain, and prescribed medication for the pain and recommended she use a back brace and soft cervical collar.  *Id*.[4]

Dr. Wong treated Claimant on 10 occasions between May 2007 and February 2008.  R. 1186-95.  Claimant reported pain on several occasions, but also reported that she was "doing fine and [had] no complaint[s]" on several occasions.  *Id*.  Claimant's physical examinations were unremarkable.  *Id*.  Dr. Wong consistently diagnosed Claimant with chronic neck and low back pain, and occasionally diagnosed her with anxiety and rheumatoid arthritis.  *Id*.

Dr. Wong completed an "Arthritis Residual Functional Capacity Questionnaire" (the Assessment) on May 9, 2008.  R. 1207-10.  Dr. Wong indicated that he diagnosed Claimant with chronic neck and back pain and rheumatoid arthritis.  R. 1207.  Dr. Wong indicated that Claimant had exhibited a reduced range of motion in her neck, lower back and both shoulders, reduced grip strength, abnormal posture, muscle spasms, and abnormal gait.  *Id*.   Dr. Wong opined that Claimant can sit for a total of two hours in an eight-hour workday, and sit for no more than 30 minutes before needing to get up.  R. 1208-09.  Dr. Wong opined that Claimant can stand/walk for a total of two hours in an eight-hour workday, can walk no more than one block before needing to rest, and can stand for no more than 15 minutes before needing to sit down.  *Id*.  Dr. Wong opined that Claimant requires the ability to shift positions at will.  R. 1209.  Dr. Wong opined that Claimant can rarely lift/carry less than 10 pounds, and never lift/carry anything over 10 pounds. *Id*.  Dr. Wong opined Claimant can never twist, stoop, crouch, or climb ladders or stairs.  R. 1210.

---

[4] This is the only instance Dr. Wong recommended that Claimant wear a back brace and soft cervical collar.  *See* R. 1160, 1186-96, 1211, 1295-1325.

Dr. Wong opined Claimant's ability to reach, handle and finger is limited in both upper extremities. *Id*. Dr. Wong opined that Claimant is unable to perform low stress jobs, and will likely miss four or more days of work due to her impairments. R. 1208, 1210.

Dr. Wong treated Claimant on 18 occasions between July 2008 and October 2010. R. 1211, 1295-325. Claimant routinely reported pain in her neck and lower back. *Id*. Claimant's examinations were largely unremarkable, with only one observation of tenderness and swelling in her right ankle (R. 1305), and one observation of tenderness in her neck and lower back (R. 1296). R. 1211, 1295-325. Dr. Wong consistently diagnosed Claimant with chronic neck and low back pain and rheumatoid arthritis throughout this period of time, and occasionally diagnosed her with anxiety, hepatitis C, and hypothyroidism. *Id*.

The ALJ considered Dr. Wong's treatment records and Assessment, R. 47-52, and stated the following with respect to the Assessment:

> The [ALJ] gives little weight to Dr. Sridhar's May 2004 opinion that the claimant was limited to a range of sedentary work activity (Exhibit 30F). Dr. Sridhar's opinion appears to be largely based on the claimant's subjective complaints as his opinion does not correlate with his own findings on physical examination, which showed relatively normal musculoskeletal and neurological functioning and his own notation that the claimant presented to the examination in two-inch heels. It is also inconsistent with other examinations, which consistently showed normal strength and sensation (Exhibits 11F, 13F, 18F, 30F, 32F). It is also inconsistent with the August 2001 EMG studies performed by Dr. Alvarez, which failed to demonstrate any lumbar radiculopathy. *The [ALJ] gives little weight to Dr. Wong's opinion for these same reasons (Exhibits 57F, 60F, and 67F)*. Additionally, the provisions of SSR 96-8p make it clear that a claimant's residual functional capacity is " . . . the most they can do and not the least."

R. 67-68 (emphasis added).[5]  Thus, the ALJ assigned little weight to Dr. Wong's Assessment for the same reasons he assigned Dr. Sridhar's opinion little weight.  *Id.*

The parties offer different interpretations of the ALJ's decision to assign the Assessment little weight.  Claimant maintains that the ALJ relied on Dr. Sridhar's examination and opinion, as well as numerous medical records from 2001 through 2004 to reject the Assessment.  Doc. 20 at 18.  Claimant argues that the source and age of such evidence does not provide good cause to assign the Assessment little weight.  *Id.*  The Commissioner, on the other hand, maintains that the ALJ relied on Dr. Wong's treatment records to reject his Assessment.  Doc. 21 at 9-10.  In support, the Commissioner points to the ALJ's citation of Dr. Wong's treatment records.  *Id.* at 10.  The Commissioner maintains Dr. Wong's treatment records are inconsistent with his Assessment, and, thus, argues that the ALJ provided good cause, supported by substantial evidence, to assign the Assessment little weight.  *Id.* at 10-11.  The undersigned finds each party's interpretation of the ALJ's decision unavailing.

The ALJ assigned little weight to the Assessment for the "same reasons" he assigned Dr. Sridhar's opinion little weight.  R. 68.  Thus, the ALJ assigned little weight to the Assessment because, as with Dr. Sridhar's opinion, the Assessment was inconsistent with: 1) Dr. Wong's physical examination findings, which were largely unremarkable (R. 1159-162, 1186-196, 1295-1325); 2) other examinations, which consistently revealed normal strength and sensation (R. 697-703, 722-40, 776-81, 852-61, 869-84); and 3) Dr. Alvarez's August 2001 EMG study, which failed to reveal any lumbar radiculopathy (R. 727-29).  R. 67-68.

---

[5] Dr. Sridhar conducted a one-time physical examination of Claimant on May 17, 2004.  R. 852-61.

The ALJ articulated good cause to assign the Assessment little weight.  First, Dr. Wong's Assessment is inconsistent with his treatment records.  Specifically, Dr. Wong indicated that Claimant exhibited a reduced range of motion in her neck, lower back and both shoulders, reduced grip strength, abnormal posture, muscle spasms, and abnormal gait.  R. 1207.  Dr. Wong's treatment notes, however, contain no mention of these issues.  *See* R. 1159-162, 1186-196, 1295-1325.  Dr. Wong's treatment records, as the ALJ noted, were largely unremarkable, with one observation of a swollen ankle, and two observations of tenderness in Claimant's neck and lower back.  R. 68 (citing R. 1159-162, 1186-196, 1295-1325).  Therefore, Dr. Wong's Assessment is inconsistent with his treatment records.

Second, the Assessment is also inconsistent with other medical evidence of record.  R. 68 (citing R. 697-703, 722-40, 776-81, 852-61, 869-84).  The ALJ notes that medical evidence dating from 2001 and 2004 consistently revealed largely unremarkable physical examinations, and negative objective findings.  *Id*.  This evidence is inconsistent with the Assessment, a fact Claimant does not challenge.  Claimant, however, maintains that the ALJ's reliance on medical evidence pre-dating the Assessment cannot be good cause to reject the Assessment.  Doc. 20 at 18.  The undersigned is unpersuaded for two principle reasons.  First, Claimant cites no authority in support of her argument.  *See id*.  Second, the medical evidence at issue post-dates the alleged disability onset date.  Therefore, while the evidence pre-dates the Assessment by several years, it is nevertheless relevant in determining whether she became disabled during the relevant period.  In light of the foregoing, the undersigned finds that the ALJ articulated good cause, supported by substantial evidence, to assign the Assessment little weight.  Accordingly, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

**B.  Dr. Winters.**

Claimant argues that the ALJ erred by assigning Dr. Winters' opinion some weight.  Doc. 20 at 18-19.  The Commissioner argues that the ALJ properly weighed Dr. Winters' opinion, and fully incorporated the limitations therein into his RFC determination.  Doc. 21 at 12-13.

Claimant treated at Dr. Winters' practice between 2007 and 2010.  R. 1163-83, 1197-206.[6] On July 2, 2012, Dr. Winters, a psychiatrist, completed a Mental Residual Functional Capacity Assessment (the Mental Assessment).  R. 1401-04.  The Mental Assessment is divided into three sections.  R. 1401-03.   In Section I, Dr. Winters indicated that Claimant is "not significantly limited" in her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, make simple work related decisions, and ask simple questions or request assistance.  R. 1401-02.  Dr. Winters also indicated that Claimant is "moderately limited" in her ability to sustain an ordinary routine without special supervision, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them, maintain socially appropriate behavior, and be aware of normal hazards and take appropriate precautions.  *Id*.  Dr. Winters further indicated that Claimant is "markedly limited" in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, work in coordination with others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals.  *Id*.   Dr. Winters did not complete section two of the Mental

---

[6] It is unclear whether Dr. Winters treated Claimant during each visit.  *See* R. 1163-83, 1197-206.

Assessment.  R. 1402-03.  Dr. Winters also did not complete section three (Section III) of the Mental Assessment, which essentially requests that he opine on Claimant's RFC in light of his summary conclusions from Section I.  R. 1403.  Dr. Winters, instead, wrote "see document on separate pages included[.]"  *Id.*  It appears Dr. Winters is referring to a narrative summary, in which he details Claimant's treatment history, her mental impairments (severe bipolar disorder, general anxiety disorder, and a history of panic disorder), and the medications used to treat her mental impairments.  R. 1404.  This document, however, identifies no specific functional limitations caused by her mental impairments.  *Id.*

The ALJ considered the treatment records from Dr. Winters' practice and the Mental Assessment, R. 49, 53, and stated the following with respect to the Mental Assessment:

> The [ALJ] gives some weight to . . . the July 2012 opinion of Dr. Winters (Exhibit 74F) to the extent that [it is] consistent with the [ALJ's] residual functional capacity determination.  Any limitations not included in the residual functional capacity determination are based on the claimant's polysubstance abuse, her failure to comply with her treatment regimen and her own report of the efficacy of her medications when she was taking them as prescribed.

R. 66.  Therefore, the ALJ gave the Medical Assessment some weight.  *Id.*

Claimant maintains that the ALJ erroneously assigned "some weight" to the Mental Assessment, because he rejected Dr. Winters' opinions that she was markedly limited in multiple areas of functioning.  Doc. 20 at 19.  Claimant tersely argues that the ALJ erroneously provided conclusory reasons to reject the marked limitations identified by Dr. Winters.  *Id.*  The Commissioner argues that the ALJ properly weighed the Mental Assessment, and fully incorporated the limitations therein into his RFC determination.  Doc. 21 at 12-13.

Claimant essentially argues that the ALJ should have included or accounted for the marked limitations Dr. Winters identified in Section I of the Mental Assessment.  The Eleventh Circuit has

addressed a similar argument in *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610 (11th Cir. 2012)

(per curiam).  In *Jones*, the claimant argued that the ALJ failed to account for the opinions of two

non-examining, consultative physicians who completed a Mental Residual Functional Capacity

Assessment and indicated, under Section I, that claimant was "moderately limited" in his "ability

to complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods." *Jones*, 478 F. App'x at 612.  The Eleventh Circuit disagreed, explaining:

> This argument is also unavailing because it does not consider "*all* of
> the relevant medical and other evidence" that was before the ALJ.
> 20 C.F.R. § 404.1545(a)(3) (emphasis added).  The Social Security
> Administration's Programs Operations Manual System (POMS)
> clarifies that the boxes checked by Dr. Zelenka and Dr. Bee are only
> part of a worksheet that "does not constitute the [doctors' actual]
> RFC assessment."  POMS DI § 24510.060(B)(2). Checking the box
> "Moderately Limited" means only that the claimant's capacity is
> impaired; it does not indicate the degree and extent of the limitation.
> *See Id*. § 24510.063(B)(2).  After checking the boxes as an "aid," *Id*.
> § 24510.060(B)(2), a doctor is then required to detail his actual RFC
> assessment.  *See Id*. § 24510.060(B)(4).
>
> Consistent with these directives, both Dr. Zelenka and Dr. Bee, after
> checking the various boxes, elaborated on their opinions regarding
> Jones's ability to concentrate.  Dr. Zelenka explained that Jones has
> "occasional" problems with his attention span, but that he otherwise
> "retains adequate mental ability to carry out simple instr[uctions]
> and to relate adequately to others in a routine work setting."
> Similarly, Dr. Bee stated that Jones "may" have "occasional lapses
> in concentration and efficiency," but that he otherwise "appears
> mentally capable of well structured task activity."  These opinions
> tend to support the ALJ's finding.

*Id*.  Thus, checking a box in Section I of a Mental Residual Functional Capacity Assessment

indicating that claimant is moderately or markedly limited does not constitute the physician's

actual RFC assessment.  *Id*.  Instead, the findings in Section I are merely aids used by the physician

to render his or her RFC determination in Section III of the Mental Residual Functional Capacity

Assessment.  *Id*.; *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49-50 (11th Cir. 2012) (per curiam) (stating that checking the box in Section I of a mental RFC assessment form does not indicate the degree and extent of the limitation, but rather is an aid before the doctor renders his or her RFC determination).  The undersigned finds *Jones* and *Land* persuasive.

In this case, as in *Jones* and *Land*, Dr. Winters checked boxes in Section I of the Mental Assessment indicating that Claimant has moderate and marked limitations in several areas of functioning.  R. 1401-02.  These Section I findings were merely an aid intended to assist Dr. Winters in rendering his RFC determination in Section III, and not part of his RFC determination.  *Jones*, 478 F. App'x at 612; *Land*, 494 F. App'x at 49-50.  The undersigned recognizes that Dr. Winters did not opine that Claimant has any specific functional limitations in Section III (or in his narrative summary).  R. 1403-04.  The undersigned, though, is not convinced that this omission alters the significance of Dr. Winters' Section I findings.  Therefore, in light of *Jones* and *Land*, the undersigned finds that the ALJ was under no obligation to include or account for Dr. Winters' Section I findings in his RFC determination.  *Jones*, 478 F. App'x at 612; *Land*, 494 F. App'x at 49-50.

The ALJ nevertheless accounted for Dr. Winters' Section I findings in his RFC determination.  Specifically, the ALJ found that Claimant can perform simple, rote, and repetitive job tasks in a work setting that does not change from one day to the next, and should not be required to meet any production goals or quotas.  R. 32.  These limitations sufficiently account for Dr. Winters' findings that Claimant is capable understanding, remembering and carrying out short and simple instructions and making simple work-related decisions, but is markedly limited in understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods of time, performing activities within a schedule, responding

appropriately to changes at work, and setting realistic goals.  R. 1401-02.  The ALJ also found that Claimant would perform better working with things as opposed to people, should not have contact with the public, and should have only occasional contact with co-workers and supervisors.  R. 32. These limitations sufficiently account for Dr. Winters' findings that Claimant is capable of asking simple questions and requesting assistance, but is moderately limited in interacting appropriately with the general public, getting along with co-workers, accepting instructions and criticism from supervisors, and markedly limited in working in coordination with others without being distracted by them.  R. 1401-02.  Thus, in spite of the ALJ assigning the Mental Assessment "some weight," the ALJ sufficiently accounted for Dr. Winters' Section I findings in his RFC determination. Therefore, the undersigned finds that the ALJ committed no error with respect to Dr. Winters' Mental Assessment.  Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### C.  Dr. Parnell.

Claimant argues that the ALJ failed to weigh Dr. Parnell's opinions.  Doc. 20 at 19-20. The Commissioner argues that Dr. Parnell did not provide an opinion as to "any work-related limitation or judgment about the nature and severity of [Claimant's] impairments."  Doc. 21 at 15. Therefore, the Commissioner argues that there were no opinions from Dr. Parnell to weigh, and, thus, the ALJ committed no error with respect to Dr. Parnell.  *Id*. at 15-16.

Claimant began treating with Dr. Parnell, a family physician, on March 27, 2002.  R. 843. Claimant complained of chronic low back pain.  *Id*.  Dr. Parnell's examination of Claimant's back revealed diffuse tenderness of the lumbosacral spine, but no trigger points.  *Id*.  Dr. Parnell diagnosed Claimant with "low back syndrome," and treated her pain with medication.  *Id*.

Claimant treated with Dr. Parnell on four more occasions after March 27, 2002.  R. 839-42.  Dr. Parnell's subsequent examinations of Claimant routinely revealed diffuse and/or minimal tenderness in various areas of the spine, but were otherwise unremarkable.  R. 840-42.  Dr. Parnell's original diagnosis of "low back syndrome" remained relatively consistent over time, and he continued to treat her pain with medication.  R. 839-42.  The record contains no other evidence from Dr. Parnell.

Claimant argues that the ALJ erred by not weighing Dr. Parnell's opinions.  Doc. 20 at 19-20.  Claimant, however, does not point to any medical opinions from Dr. Parnell.  *See id.*  A medical opinion is a statement from an acceptable medical source, such as Dr. Parnell, that "reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite [his or her] impairment(s), and [claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added); *Winschel*, 631 F.3d at 1178-79.  The ALJ considered Dr. Parnell's treatment records.  R. 37-38 (citing R. 839-43).  Dr. Parnell's records detail Claimant's subjective complaints, physical examination findings, diagnoses, and course of treatment.  R. 839-43.  The treatment records contain no opinions about what Claimant can do despite her impairments or her physical restrictions.  Thus, the treatment records neither constitute nor contain medical opinions that must be weighed.  *See Winschel*, 631 F.3d at 1178-79.  Therefore, the undersigned finds that the ALJ did not err by failing to weigh Dr. Parnell's treatment records.  Further, Claimant has failed to demonstrate that Dr. Parnell's treatment records reveal that her impairments result in greater limitations than those already contained in the ALJ's RFC determination.  *See* Doc. 20 at 19-20.  Therefore, even if the ALJ should have weighed Dr. Parnell's treatment records, the undersigned finds any resulting error is harmless. *See, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678,

684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination).   Accordingly, it is **RECOMMENDED** that the Court reject Claimant's third assignment of error.

### D.  Drs. Francis and Winfrey.

Claimant argues that the ALJ erred by giving weight to Drs. Francis' and Winfrey's opinions.  Doc. 20 at 21.[7]  The Commissioner argues that the ALJ properly weighed Drs. Francis' and Winfrey's opinions, and the weight he assigned to each opinion is supported by substantial evidence.  Doc. 21 at 16-18.

Drs. Francis and Winfrey are non-examining consultative physicians, who testified at the April 2, 2014 hearing.  R. 1652-98.  Dr. Francis, an orthopedic specialist, offered testimony concerning Claimant's physical impairments and resulting limitations.  R. 1656-68.  Specifically, Dr. Francis testified that Claimant is capable of performing medium work.  R. 1665.  Dr. Winfrey, a psychologist, offered testimony concerning Claimant's mental impairments and whether she met or equaled any of the relevant listed mental impairments.  R. 1670-89, 1693-98.  Dr. Winfrey testified that Claimant did not meet or equal any of the relevant listed mental impairments.  R. 1682-89.

The ALJ considered Drs. Francis' and Winfrey's testimony and opinions.  R. 31, 59-61. The ALJ assigned Dr. Francis' opinion "greater weight," because "it is consistent with the objective medical evidence of record, which fails to show ongoing loss of sensory, motor function, or reflex deprivation or loss of muscle strength or tone, as well as with the claimant's activities of

---

[7] The record contains several opinions from non-examining consultative physicians, but Claimant only expressly addresses Drs. Francis' and Winfrey's opinions.  Doc. 20 at 21.  Therefore, the undersigned will consider whether the ALJ committed any error with respect to Drs. Francis' and Winfrey's opinions.

daily living."  R. 67.  The ALJ assigned Dr. Winfrey's opinion "some weight[,]" finding her opinion was generally consistent with the medical record.  R. 66.

The ALJ did not err in weighing Drs. Francis' and Winfrey's opinions.  Claimant essentially argues that Dr. Francis' and Winfrey's opinions should have been given little weight because they were non-examining physicians.  Doc. 20 at 21.  The opinion of a non-examining physician is generally entitled to little weight.  *Broughton*, 776 F.2d at 962.  The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence.  *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).  The ALJ found Dr. Francis' and Winfrey's opinions were consistent with the medical record, R. 66-67, and Claimant has failed to demonstrate that the ALJ's finding is not supported by substantial evidence.  *See* Doc. 20 at 21-22.  The ALJ's determination to assign "greater weight" to Dr. Francis' opinion, for example, is supported by substantial evidence for the reasons stated in his decision.  Specifically, Dr. Francis' opinion is consistent with many of Claimant's treatment records, which routinely detailed unremarkable physical examinations and formed the basis for assigning Dr. Wong's Assessment, which is more restrictive than Dr. Francis' opinion, little weight.  *See, e.g.*, R. 67-68, 1159-162, 1186-196, 1295-1325; *see Jarrett v. Comm'r of Soc. Sec. Admin.*, 422 F. App'x 869, 873 (11th Cir. 2011) (finding that the ALJ properly gave more weight to the opinions of non-examining physicians that were more consistent with the record than the opinion of a treating physician).  Further, the ALJ did not rely solely on Dr. Francis' and Winfrey's opinions in reaching his RFC determination, but relied on other evidence and medical opinions, such as Dr. Winters' Mental Assessment.  *See* R. 32-69.  In light of the foregoing, the undersigned finds that the ALJ

did not err in weighing or relying on Drs. Francis' and Winfrey's opinions.[8]  Accordingly, it is

**RECOMMENDED** that the Court reject Claimant's fourth assignment of error.

**V.**      **CONCLUSION.**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.      **AFFIRM** the final decision of the Commissioner; and

2.      Direct the Clerk to enter judgment in favor of the Commissioner and against

Claimant, and close the case.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R.

3-1.

---

[8] Claimant also argues the ALJ erred by relying on Dr. Francis' opinion, because his medical license is "exempt."  Doc. 20 at 21 (citing various websites).  The Claimant was given an opportunity to object to Dr. Francis' qualifications at the hearing, but she had no objection.  R. 1653.  Therefore, the ALJ did not further explore Dr. Francis' qualifications or choose another expert to testify.  As a result, the undersigned finds Claimant has waived her right to challenge Dr. Francis' qualifications. *See Biles v. Colvin*, 2016 WL 3876443, at *10 (N.D. Fla. June 28, 2016) (finding claimant waived argument challenging vocational expert's qualifications where claimant stated she had no objection to the vocational expert serving as such in the case).  Further, to the extent Claimant has not waived the argument, the undersigned finds that Dr. Francis is an acceptable medical source.  There is no dispute that Dr. Francis is a licensed physician, *see* Doc. 20 at 21-2; 21 at 18-19, and thus meets the regulation's definition for an acceptable medical source. 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1).  Claimant cites no authority indicating that the exempt status of his medical license either precludes him from being an acceptable medical source, or undermines the reliability of his opinions. *See* Doc. 20 at 21-22.  Therefore, on this record, the undersigned finds Claimant's argument challenging the ALJ's reliance on Dr. Francis' testimony and opinions due to the status of his medical license to be unavailing.

Recommended in Orlando, Florida on January 10, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy